Pursuant to the memorandum filed herein this day,

IT IS HEREBY ORDERED that defendants' motions to dismiss be and are denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment be and is granted as to Counts I and III and be and is denied as to Count IV.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment be and is denied.

IT IS FURTHER ORDERED that defendants' motion for a more definite statement as to Count II be and is denied.

IT IS FURTHER ORDERED that plaintiff's motion for sanctions be and is denied.

---

**5.** To the extent that plaintiff's petition states a constitutional violation as a result of defendants' alleged violation of the Missouri APA, the Court finds Count III to be merely a repetition of the allegations raised in Count I.

Charissa OROZCO, by her natural parents and guardians ad litem Joanne OROZCO and John Orozco; and Joanne Orozco and John Orozco, individually

v.

CHILDREN'S HOSPITAL OF PHILADELPHIA, a corporation of the Commonwealth of Pennsylvania, Francis King, M.D., Sidney Friedman, M.D., William J. Rashkind, M.D., J. Hudson Allender, M.D., David Swedlow, M.D., John Doe and Jane Doe, fictitiously named employees of Children's Hospital of Philadelphia.

Civ. A. No. 85–2622.

United States District Court, E.D. Pennsylvania.

July 7, 1986.

---

**6.** Defendants are encouraged to raise the validity of Count II of plaintiff's complaint in a motion for summary judgment if in fact such a motion is warranted.

Frank W. Hayes, West Chester, Pa., for plaintiffs.

Robert A. Prentice, Philadelphia, Pa., for Sidney Friedman, M.D., William J. Rashkind, M.D., and David Swedlow, M.D.

Malcolm L. Lazin, Philadelphia, Pa., for Francis King, M.D.

James P. Dornberger, David Federman, Philadelphia, Pa., for Children's Hosp. of Philadelphia and J. Hudson Allender, M.D.

## OPINION

LUONGO, Chief Judge.

In this medical malpractice action, plaintiffs Charissa, Joanne and John Orozco seek to recover for injuries Charissa Orozco allegedly sustained due to a misdiagnosis of her condition. The named defendants—the Children's Hospital of Philadelphia; Francis King, M.D.; Sidney Friedman, M.D.; William J. Rashkind, M.D.; J. Hudson Allender, M.D.; and David Swedlow, M.D.—have moved for summary judgment, alleging that plaintiffs' action is barred by the applicable statute of limitations. For the reasons stated below, I will grant the motion for summary judgment.

Charissa Orozco was born on October 13, 1980. On January 2, 1981 she was admitted to Children's Hospital for treatment of respiratory problems. She was hospitalized and under the care of the defendant doctors from January 2 until June 12, 1981. According to the complaint, Charissa's doctors believed a lung condition was the primary source of her problems. It was not until March 5, 1981 that she was properly diagnosed as having patent ductus arteriosus, a heart-related condition. This condition was corrected by surgery on March 6, 1981. Plaintiffs filed this lawsuit on May 1, 1985, charging that defendants' delay in diagnosing Charissa's condition had caused Charissa to undergo extensive and unnecessary tests, operations and diagnostic procedures, from which she sustained medical

problems including scars and permanent damage to her voice, circulatory system and respiratory system.

Defendants' summary judgment motion is based upon Pennsylvania's two-year statute of limitations for personal injury actions, 42 Pa.C.S.A. § 5524(2). Plaintiffs contend, in opposition, that although the alleged acts of medical malpractice occurred in 1981, their action is timely due to the combined operation of Pennsylvania's "discovery rule" and 42 Pa.C.S.A. § 5533, which was amended on May 30, 1984 to include a minority tolling provision.

■ Pennsylvania's discovery rule applies to cases in which an injured person is unable, "despite the exercise of diligence, to determine the injury or its cause." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983). The rule provides that " 'the statute of limitations begins to run when the plaintiff knows or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.' " *Cowgill v. Raymark Industries*, 780 F.2d 324, 330 (3d Cir.1985) (quoting *Pastierik v. Duquesne Light Co.*, 341 Pa.Super. 329, 330, 491 A.2d 841, 842 (1985), *appeal granted*, 505 A.2d 254 (Pa. 1986)); *Burnside v. Abbott Laboratories*, 505 A.2d 973, 987 (Pa.Super.1985).

■ Plaintiffs claim they first learned in December of 1983, from Dr. Norman Sissman, that Charissa's heart condition should have been diagnosed earlier. Plaintiffs' own testimony, however, demonstrates that they possessed the necessary information not later than June of 1981, when Charissa was discharged from the hospital. Joanne Orozco testified at a deposition that Charissa, during her hospital stay, suffered from vein problems, paralysis of the right hand, ventilator dependency, exposure to radioactive substances and viruses. When Charissa was discharged, she had an abnormal breathing pattern and obvious scars from a stomach operation. Deposition of Joanne Orozco at 38–39, 61–62 (Nov. 18, 1985). Plaintiffs' memorandum of law states that some of Charissa's injuries were not imme-

diately manifest. Joanne Orozco, however, acknowledged that the effects of Charissa's medical treatment were all apparent to the plaintiffs when she was discharged. *Id.* at 63. In any event, once the statute of limitations begins to run on an injury claim it also runs with respect to related injuries arising from the same negligent conduct, even if the related injuries are not immediately ascertainable. *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 471 A.2d 493, 507 (1984); *Shadle v. Pearce*, 287 Pa.Super. 436, 430 A.2d 683, 685–686 (1981).

Plaintiffs also knew or reasonably should have known of the cause of Charissa's ailments. Joanne Orozco testified that the doctors kept plaintiffs informed on a day to day basis of Charissa's condition and the complications which arose from her treatment. Deposition of Joanne Orozco at 32, 38–39. Until March 5, 1981 defendants had assured plaintiffs that Charissa's heart looked fine. On March 5, her heart problem was diagnosed and, after corrective surgery on March 6, her condition began to improve. Joanne Orozco acknowledged that Charissa's respiratory problems had been caused by patent ductus arteriosus rather than by a lung condition, and that plaintiffs had been so informed immediately after the diagnosis. *Id.* at 26–31. Plaintiffs recognized that Charissa's prior treatment, in particular the stomach operation, had not helped her. *Id.* at 32–36. Finally, Joanne Orozco acknowledged that the doctors themselves raised questions concerning the delay in diagnosis:

ALLAN STARR: When you were told that patent ductus arteriosus was diagnosed and that surgery would be performed, did you have any concern or question to the physicians as to why that diagnosis hadn't been made sooner?

JOANNE OROZCO: They had the questions to themselves. I didn't have to even pose the question.

ALLAN STARR: Well, how did that come up? Tell me what was said and who said it.

JOANNE OROZCO: All the general feeling and all of the input that we had was that that's a very simple procedure, it happens all the time, we should have picked it up.

ALLAN STARR: And who was it, if you can remember, saying we should have picked it up sooner? Can you give me the names of any physicians?

JOANNE OROZCO: All of the doctors that we were in contact with.

ALLAN STARR: Who were they?

JOANNE OROZCO: All of the doctors; Dr. Wagner, Dr. Swedlow, Dr. Raphaely, all of the interns.

It was really an open channel of communication, that that—they had to explain to us what it was that we were dealing with so we had a full understanding of what the surgery procedure would be, at what risk her life was, because she was in such poor condition....

*Id.* at 31–32.

■ Plaintiffs understandably assert that at the time they were preoccupied with Charissa's life, not with the possibility that mistakes had been made. They claim they did not know until they consulted Dr. Sissman that anyone had been negligent. The Pennsylvania courts, however, have "rejected the argument that a plaintiff must know that he has a cause of action—that someone is legally culpable—before the statute of limitations begins to run." *Staiano v. Johns-Manville Corp.*, 304 Pa.Super. 280, 450 A.2d 681, 684 (1982). *See also Burnside*, 505 A.2d at 988; *Ciprut v. Moore*, 540 F.Supp. 817, 819 (E.D.Pa.1981), *aff'd mem.*, 688 F.2d 819 (3d Cir.1982); *DeMartino v. Albert Einstein Medical*

*Center*, 313 Pa.Super. 492, 460 A.2d 295, 298–99 (1983).

I am very well aware that the question whether plaintiffs acted with the diligence required under the discovery rule is normally left to a jury. *Id.* at 304; *Burnside*, 505 A.2d at 988. In this case, however, there are no material factual issues for a jury to resolve. The record compels the conclusion that, by June of 1981, plaintiffs [1] had sufficient knowledge concerning Charissa's injuries and the circumstances surrounding those injuries to investigate and pursue their claims. *See, e.g., O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 709–11 (3d Cir.1981); *Ciprut*, 540 F.Supp. at 820–21; *Bosworth v. Plummer*, 510 F.Supp. 1027, 1032 (W.D.Pa.1981); *Wallace v. Horvath*, 283 Pa.Super. 179, 423 A.2d 1047, 1049–50 (1980). The statute of limitations therefore expired in June of 1983.

■ Because plaintiffs' action was barred in June of 1983, the minority tolling provision[2] enacted May 30, 1984 and effective 30 days thereafter does not inure to their benefit. In Pennsylvania, "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926. Plaintiffs have presented no evidence that the minority tolling provision was intended to apply to causes of action which had expired before its effective date. Moreover, Pennsylvania courts have held that "after an action has become barred by an existing statute of limitations, no subsequent legislation will remove the bar or revive the action." *Overmiller v. D.E. Horn & Co.*, 191 Pa.Super. 562, 568, 159 A.2d 245 (1960). *See also Maycock v. Gravely Corp.*, 508 A.2d 330 (Pa.Super.

---

**1.** In reaching this conclusion I have relied primarily on Joanne Orozco's deposition testimony. The deposition of John Orozco indicates that he was not at the hospital as constantly and may not have been as familiar with the details of Charissa's treatment and condition as was his wife. Joanne Orozco's knowledge, however, must be imputed to all plaintiffs.

**2.** The new minority tolling statute provides:
If an individual entitled to bring a civil action is an unemancipated minor at the time the

cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor" shall mean any individual who has not yet attained the age of 18.
42 Pa.C.S.A. § 5533(b).

1986); *Lando v. Urban Redevelopment Authority*, 49 Pa.Commw. 566, 411 A.2d 1274, 1275 n. 1 (1980); *Wiegand Appeal*, 214 Pa.Super. 371, 257 A.2d 627 (1969).

Finally, plaintiffs contend that the six-year statute of limitations set forth in 42 Pa.C.S.A. § 5527 applies to their claim for breach of agreement. Pennsylvania law is clear, however, that "[i]n the absence of a special contract, a physician or surgeon is neither a warrantor of a cure nor a guarantor of the result of his treatment." *Donaldson v. Maffucci*, 397 Pa. 548, 553, 156 A.2d 835 (1959). As plaintiffs urge, a patient may assert a breach of warranty claim if a physician expressly guarantees a specific result which he fails to achieve. *Murray v. University of Pennsylvania Hospital*, 340 Pa.Super. 401, 490 A.2d 839, 841–43 (1985) (claim based on express warranty that tubal ligation would prevent future pregnancies). Plaintiffs' complaint does not, however, set forth any *express* warranties made in connection with defendants' treatment of Charissa. Moreover, the alleged promise to "achieve the health of the minor plaintiff" is simply too vague and general to constitute a specific, enforceable warranty. Plaintiffs' complaint is one for personal injuries caused by alleged medical malpractice, and is thus governed by the two-year statute of limitations set forth in 42 Pa.C.S.A. § 5524(2). Because plaintiffs did not bring this action within the applicable statutory period, their claims are barred. Accordingly, defendants' motions for summary judgment will be granted.