**Chrystal Lynn PITTS**

v.

**NORTHERN TELECOM, INC., Northern Telecom, Ltd., Honeywell, Inc., Key Tronic Corp., Apertus Technologies, Inc.**

No. CIV.A. 95–4799.

United States District Court, E.D. Pennsylvania.

Oct. 29, 1998.

---

Bethann P. Schaffzin, Philadelphia, PA, for Plaintiff.

Howard M. Klein, Philadelphia, PA, Andrew Hanan, Philadelphia, PA, Frederick W. Rom, Philadelphia, PA, Peter F. Jones, Denver, CO, Kevin E. O'Brien, Denver, CO, Robert McCormick, Denver, CO, Fiona J. Van Dyck, Philadelphia, PA, Laurie H. Polinsky, Philadelphia, PA, Leslie T. Bradley, Philadelphia, PA, Michael W. McTigue, Jr., Philadelphia, PA, Joseph M. Cincotta, Philadelphia, PA, Alan R. Gries, Philadelphia, PA, Alan H. Ross, Philadelphia, PA, Mark R. Bosniak, Philadelphia, PA, for Defendants.

## *MEMORANDUM*

WALDMAN, District Judge.

### I. *Background*

Presently before the court are the motions of defendants Northern Telecom, Inc. (NTI), Apertus Technologies, Inc. and Key Tronic Corp. for summary judgment in this repetitive-stress injury case. Plaintiff alleges that she developed bilateral carpal tunnel syndrome from using the computer keyboards provided to her during her employment as a directory assistance operator at Bell Atlantic.

Plaintiff filed this action in the Philadelphia Common Pleas Court. She asserts against each defendant strict liability and negligence claims. She also asserts claims for breach of unspecified express warranties and for breach of implied warranties of merchantability and fitness for a particular purpose. Defendants removed the action to this court pursuant to 28 U.S.C. § 1441.

### II. *Legal Standard*

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 786 F.2d 564, 568 (3d Cir. 1986). Only facts that may affect the outcome of a case are "material." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. All reasonable inferences from the record must be drawn in favor of the non-movant. *See id.* 477 U.S. at 256, 106 S.Ct. 2505.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must

then establish the existence of each element on which it bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The non-moving party may not rest on his pleadings, but must come forward with evidence from which a reasonable jury could return a verdict in his favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989); *Woods v. Bentsen,* 889 F.Supp. 179, 184 (E.D.Pa.1995).

### III. *Facts*

The pertinent facts as uncontroverted or taken in a light most favorable to plaintiff are as follow.

Plaintiff began working for Bell Atlantic in 1988. Between 1988 and 1990, she used a keyboard manufactured and sold by defendant Apertus. Between 1990 and June 1994, she used keyboards manufactured and sold by defendant NTI. At some time during this period, defendant Key Tronic provided keyboards to IBM which it in turn provided to NTI.

Plaintiff began to suffer from pain in her hands and wrists shortly after she began working in 1988. She initially thought this was simply the result of becoming acclimated to a job requiring constant typing, however, the pain worsened over time. Plaintiff thought that her ailments were the result of pregnancy-induced edema. She states that she had previously been under the impression that carpal tunnel syndrome was caused by pregnancy or repetitive motion and did not believe that "repetitive motion" included working in front of a computer.

Clarence Martin, M.D. examined plaintiff on February 12, 1992. While in retrospect he believes plaintiff might have been suffering from carpal tunnel syndrome on that date, he did not then diagnose her with that condition. A Bell Atlantic company physician diagnosed plaintiff on July 14, 1993 as having carpal tunnel syndrome. Plaintiff does not aver or present any evidence that she consulted any physician in the interim.

Plaintiff has testified that "a few years" before July 15, 1993 she began to experience a tingling sensation in her fingers and the sensation of her hand falling asleep. The symptoms progressed to "shooting pains" up and down her arm and as early as 1990 she experienced numbness in her arms, hands and fingertips which caused her to use only one hand to type while resting the other.

In 1991 or 1992, plaintiff received and read a brochure distributed by Bell Atlantic regarding workplace ergonomics which specifically discussed the possibility of hand and wrist injuries caused by typing. In 1991 or 1992, plaintiff attended a Bell Atlantic training session regarding workplace ergonomics.

During Dr. Martin's examination of plaintiff in February 1992, she complained of pain and swelling in her left arm and she described for the doctor how she performed her job tasks.

Plaintiff's first child was born on September 2, 1993. Thus, plaintiff's complaints to Dr. Martin of arm pain predated her pregnancy.

### IV. *Discussion*

Defendants contend that the statute of limitations began to run on plaintiff's claims no later than February 12, 1992 and are thus time-barred. Plaintiff contends that the statute of limitations did not begin to run until the Bell Atlantic physician told her on July 14, 1993 that she suffered from carpal tunnel syndrome and thus her claims were timely filed, albeit without a day to spare.

Statutes of limitation are not "technicalities" but rather are "fundamental to a well-ordered judicial system." *U.S. v. Richardson,* 889 F.2d 37, 40 (3d Cir.1989). The Pennsylvania statute of limitations for personal injuries is two years. 42 Pa:C.S.A. § 5524(2).

■ The time for a tort action begins to accrue when an injury is sustained. *Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir.1991). The statute of limitations begins to run "as soon as the right to institute and maintain a suit arises." *Pocono Int'l Raceway, Inc. v. Pocono Produce,* 503 Pa. 80, 468 A.2d 468, 471 (1983). Lack of knowledge, mistake or mis-

understanding do not toll the running of the limitations period, even though a party may not discover his injury until it is too late to afford a remedy. *Id.* For a claim to accrue, the plaintiff need not know the exact medical cause of an injury, that the injury was caused by another party's negligence or that he has a legal cause of action. *Bohus* 950 F.2d at 924–25.

■ An individual asserting a cause of action must "use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Id. See also A. McD. v. Rosen,* 423 Pa.Super. 304, 621 A.2d 128, 130 (1993); *Petri v. Smith,* 307 Pa.Super. 261, 453 A.2d 342, 346 (1982).

■ Pennsylvania recognizes the so-called "discovery rule" which tolls the running of a statute of limitations until such time as the plaintiff knows or reasonably should know that he has sustained an injury caused by another party's conduct. *A. McD.,* 621 A.2d at 130; *Levenson v. Souser,* 384 Pa.Super. 132, 557 A.2d 1081, 1086–87, *appeal denied,* 524 Pa. 621, 571 A.2d 383 (1989); *Cathcart v. Keene Indus. Insulation,* 324 Pa.Super. 123, 471 A.2d 493, 500 (1984).

■ The standard of reasonable diligence is an objective one. *Baily v. Lewis,* 763 F.Supp. 802, 806 (E.D.Pa.1991), *aff'd,* 950 F.2d 721 (3d Cir.1991); *Kingston Coal Co. v. Felton Min. Co., Inc.,* 456 Pa.Super. 270, 690 A.2d 284, 289, *appeal denied,* 549 Pa. 702, 700 A.2d 441, (1997). The statute is tolled only if a reasonable person in plaintiff's position would not have been aware of the salient facts. *Baily,* 763 F.Supp. at 806.

It has been recognized that there are very few facts which cannot be discovered through the exercise of reasonable diligence. *Vernau v. Vic's Market, Inc.,* 896 F.2d 43, 46 (3d Cir.1990); *Urland v. Merrell–Dow Pharmaceuticals, Inc.,* 822 F.2d 1268, 1273 (3d Cir. 1987). Once plaintiff is aware of the salient facts, his failure to investigate or to exercise reasonable diligence in the investigation will not prevent the statute of limitations from running. *O'Brien v. Eli Lilly & Co.,* 668 F.2d 704, 710 (3d Cir.1981).

When the only reasonable conclusion from the competent evidence of record construed most favorably to the plaintiff is that the time it took for the plaintiff to file suit was unreasonable, summary judgment should be granted. *See Carns v. Yingling,* 406 Pa.Super. 279, 594 A.2d 337, 340 (1991); *MacCain v. Montgomery Hosp.,* 396 Pa.Super. 415, 578 A.2d 970, 974 (1990), *appeal denied* 527 Pa. 624, 592 A.2d 45 (1991).

■ The polestar of Pennsylvania's discovery rule is not plaintiff's actual knowledge but whether the pertinent information was knowable to plaintiff through an exercise of due diligence. *Bohus,* 950 F.2d at 925; *Cochran v. GAF Corp.,* 430 Pa.Super. 175, 633 A.2d 1195, 1198 (1993). "The failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law." *Id.* A plaintiff has the burden of justifying any delay beyond the date the limitations period would have expired if computed from the date of injury. *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 487 (3d Cir.1985). Thus, plaintiff must show that she could not have ascertained the operative facts underlying her cause of action even one day earlier through an exercise of due diligence. *See Bickell v. Stein,* 291 Pa.Super. 145, 435 A.2d 610, 612 (1981).

Plaintiff clearly knew before July 14, 1993, that something was wrong with her hands and wrists. It is uncontested that plaintiff experienced symptoms shortly after she started working at Bell Atlantic and they grew progressively worse over time, that she could only use one hand at a time to type, that she read information disseminated by her employer about the potential hazards of typing on a computer keyboard, including "numbness, tingling and possible pain," and that she began to suffer from precisely these symptoms years before July 1993 and at times she was not pregnant. It is difficult to escape the conclusion that plaintiff knew or clearly should have known of the likelihood that these symptoms had something to do with the use of computer keyboards at work.

Plaintiff did consult Dr. Martin on February 12, 1992. He did not then diagnose her

as having carpal tunnel syndrome although he acknowledges that in retrospect she may have had it. One could reasonably find, as plaintiff argues, that if a doctor did not know she had carpal tunnel syndrome on February 12, 1992, she could not reasonably have known it either. This, however, does not end the inquiry.

It is uncontroverted that plaintiff waited two years to the day after being actually diagnosed to file suit. Plaintiff has not presented a record on which one reasonably could find that even with due diligence, she could not have been diagnosed even one day earlier. Moreover, plaintiff did not need to know the precise medical cause of her symptoms to know she was suffering injury associated with the use of the keyboards in question. Although he did not diagnose the plaintiff's particular condition at the time, even Dr. Martin as early as February 1992 related at least some of her symptoms to performance of her tasks at work which he had her describe.

█ The reasonable diligence necessary to invoke the discovery rule and toll the limitations period requires a plaintiff to seek further medical examination, as well as competent legal representation, when appropriate. *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (1995). It is uncontested that plaintiff gave birth to her first child on September 2, 1993. It follows that plaintiff first became pregnant at some point between November of 1992 and January of 1993. Even assuming she became pregnant in early November 1992, plaintiff thus would have been experiencing the symptoms of which she complains for nine months after she saw Dr. Martin and before she became pregnant. A reasonably diligent person suffering from these symptoms would not have waited for such a period of time to seek further medical consultation, with Dr. Martin or another physician.

Plaintiff's reliance on *Trieschock v. Owens–Corning Fiberglas Co.*, 354 Pa.Super. 263, 511 A.2d 863 (1986), *appeal denied*, 514 Pa. 619, 521 A.2d 933 (1987), is misplaced. In *Trieschock*, the plaintiff's complaint was deemed timely when filed within two years of the date he was diagnosed as suffering from asbestosis. In *Trieschock*, however, the plaintiff suffered from what has been described as a "creeping disease," an affliction which initially does not manifest symptoms reasonably apparent to a lay person. Plaintiff in this case was unquestionably aware of the symptoms of which she complains which she avers started shortly after she began working for Bell Atlantic in 1988 and worsened over time.

While the precise issue of when the statute of limitations begins to run in a repetitive-stress personal injury action has not been decided by the Pennsylvania Supreme Court, it has been authoritatively decided by the highest court of New York. *See Blanco v. American Telephone & Telegraph Co.*, 90 N.Y.2d 757, 666 N.Y.S.2d 536, 689 N.E.2d 506 (1997).

The Court in *Blanco* held that in repetitive-stress cases where plaintiffs allege to have developed carpal tunnel syndrome from using computer keyboards, the personal injury statute of limitations is triggered by the "onset of symptoms or the last use of the injury-producing device, whichever is earlier." *Id.* 689 N.E.2d at 514. The Court held that the New York statutory discovery rule applicable in "toxic tort" cases did not apply in repetitive-stress cases. The Court observed that a computer keyboard "is obviously not an inherently toxic or dangerous substance, and exposure to a keyboard is not a 'wrongful invasion' in the same sense as is exposure to a toxic substance." *Id.* 689 N.E.2d at 513. The Court rejected the proposition that a carpal tunnel syndrome action accrues from the date a plaintiff is diagnosed with the condition, reasoning that such a holding would effectively allow a plaintiff "to put off the running of the Statute of Limitations indefinitely." *Id.* 689 N.E.2d at 514.

While one cannot predict with certainty that the Pennsylvania Supreme Court would agree with the New York Court of Appeals, the law of the two jurisdictions regarding tolling and discovery are similar and *Blanco* is a soundly reasoned decision.

In any event, it is simply untenable on the record presented that plaintiff could not have discovered with due diligence even one day

earlier that she had suffered an injury related to her use of the keyboards. Plaintiff's negligence and strict liability claims are thus barred by the statute of limitations. Accordingly, movants are entitled to summary judgment on those claims.[1]

 Plaintiff's warranty claims, however, are another matter. Remarkably, none of the parties noted that plaintiff's warranty claims are governed by the four-year statute of limitations provided by 13 Pa.C.S.A. § 2725. The Pennsylvania Supreme Court has squarely held that the four-year statute of limitations applies to all warranty actions arising from sales of goods, including those in which the plaintiff seeks to recover for personal injuries. *See Williams v. West Penn Power Co.*, 502 Pa. 557, 467 A.2d 811, 818 (1983). *See also Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 291 (3d Cir.1988) (recognizing "suit to recover damages for personal injuries arising from breach of warranty in the sale of goods must be commenced within the four year limitation period").

 Warranty claims accrue on the date that the seller tenders delivery of the

goods. *Hornberger v. General Motors Corp.*, 929 F.Supp. 884, 888 n. 2 (E.D.Pa.1996).[2] While, as noted, the burden is on a plaintiff seeking to take advantage of the discovery rule, the initial expiration of the limitations period is an affirmative defense on which the defendant bears the burden of proof. *See Van Buskirk*, 760 F.2d at 486–87. The discovery rule applicable to tort actions does not apply in warranty actions. *Northampton County Area Community College v. Dow Chemical, U.S.A.*, 389 Pa.Super. 11, 566 A.2d 591, 599 (1989), *aff'd*, 528 Pa. 502, 598 A.2d 1288 (1991). Thus, as to any defendant who tendered delivery of a keyboard described in the complaint on or after July 14, 1991, plaintiff's warranty claims appear to be timely.

 Plaintiff states that she first used keyboard Model TOPS MP/ID No. NT0M36AC, manufactured and sold by defendant NTI, in "1990 or 1991." There is no evidence of record as to when delivery of this keyboard was tendered.[3] In the absence of uncontroverted evidence that delivery of this keyboard was tendered before July 14, 1991, defendant has not sustained its statute of limitations defense with regard to plaintiff's warranty claim.[4]

1. Summary judgment on these claims will not be granted in favor of Northern Telecom, Ltd ("NTL"). The relationship between NTL and NTI cannot be discerned from the pleadings or any pert of the summary judgment record. Nothing in NTI's answer or motion suggests that they were also filed on behalf of NTL. Indeed, NTL has never filed an answer or any other pleading. The only document of record purportedly filed on behalf of NTL is a Rule 41 stipulation of dismissal of former defendant IBM which was signed by Fiona Van Dyck, Esq. as counsel for NTI *and* NTL. As a result, the Clerk listed Ms. Van Dyck on the docket as counsel for NTL pursuant to L.R. Civ. P. 5.1(a) although her firm had filed a formal entry of appearance for NTI only.

 Perhaps NTL was never properly served. Without waiving any service argument, regional counsel for NTL consented to the removal of this action. Plaintiff, however, certified that her complaint was served on NTL by Canadian Process Servers, Inc. and NTL has filed no Rule 12(b)(4) or (5) motion. Indeed, as noted, NTL has filed no responsive pleading and on the records appears to be in default.

2. Both the requirement of vertical privity and of horizontal privity in actions for breach of warranty have been eliminated in Pennsylvania. *See Williams*, 467 A.2d at 815–16; *Salvador v. Atlan-*

tic Steel Boiler Co., 457 Pa. 24, 319 A.2d 903, 904 (1974).

3. Presumably NTI would have access to and could otherwise have obtained from Bell Atlantic during discovery records indicating when this model product was first delivered. One must assume that if this information substantiated NTI's statute of limitations defense, it would have been presented.

4. Where a statute of limitations operates only as a procedural bar to recovery and not as a substantive limitation on or prerequisite to the right to sue, a plaintiff is not required to show that she has sued within the limitations period. *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir.1993), *cert. denied* 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994); *Ford Motor Co. v. Transport Indemnity Co.*, 795 F.2d 538, 547 (6th Cir.1986); *Emmons v. Southern Pacific Transp. Co.*, 701 F.2d 1112, 1117–18 (5th Cir.1983); *Goodwin v. Townsend*, 197 F.2d 970, 971 (3d Cir.1952). *See also Charles E. Beard, Inc. v. Cameronics Technology Corp.*, 120 F.R.D. 40, 41 (E.D.Tex.1988) (plaintiff not required to plead date of receipt of allegedly defective camera equipment in breach of warranty claim); *Natale v. Upjohn Co.*, 236 F.Supp. 37, 40–41 (D.Del.1964) (four year limitations period

Plaintiff states that from 1988 to 1990 she used a computer keyboard designed by defendant Apertus. Thus, not only are plaintiff's negligence and strict liability claims against Apertus time barred for the reasons discussed but so is her warranty claim. Clearly a keyboard used by plaintiff in 1988, 1989 and 1990 could not have been delivered on or after July 14, 1991.

The viability of plaintiff's warranty claims as to defendant Key Tronic is difficult to discern from the very limited information of record. Plaintiff's only allegation specifically against Key Tronic is that it "provided keyboards to IBM." Plaintiff also alleges that IBM provided keyboards to NTI. Plaintiff does not specifically allege or present any evidence to show that Key Tronic provided a keyboard to IBM which it provided to NTI which it sold to Bell Atlantic which was used by plaintiff. Key Tronic admits in its answer that it "provided keyboards to IBM" but nothing more.[5]

Nevertheless, the sole contention in Key Tronic's three paragraph summary judgment motion and brief is that its liability is linked to that of NTI and thus the arguments in its brief which Key Tronic "incorporates" should "apply equally" to it. The court is inclined at this juncture to take Key Tronic at its word. As plaintiff's warranty claims based on the use of NTI products are not time barred on the record presented, the court will deny summary judgment on these claims to Key Tronic as well.

` Accordingly, the motion of defendant Apertus will be granted and the motions of defendants NTI and Key Tronic will be granted as to plaintiff's tort claims and denied as to her warranty claims.

in UCC for breach of warranty actions merely imposes procedural limitation on remedy and not substantive limitation on right to sue), *aff'd*, 356 F.2d 590 (3d Cir.1966). Of course, when the expiration of the limitations period is apparent from what a plaintiff does plead or present, dismissal or judgment as a matter of law is appropriate. *Oshiver v. Levin, Fishbein, Sedran & Ber-*

*man*, 38 F.3d 1380, 1384 n. 1 (3d Cir.1994); *Tregenza*, 12 F.3d at 718–19.

**5.** Plaintiff's claims against IBM were voluntarily dismissed with prejudice pursuant to Fed. R.Civ.P. 41(a)(1) over a year ago. The reason was not given and is not apparent from the record presented.